# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CYNTHIA C. ALDERMAN,**

     **Plaintiff,**

-vs-            **Case No.  6:07-cv-1359-Orl-22DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

  The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

  The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

  For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

## I. BACKGROUND

### A. Procedural History

  Plaintiff filed for a period of disability and disability insurance benefits on May 7, 2003.  R. 26, 70-76.  She alleged an onset of disability on August 21, 2000, due to back pain, neck pain, and

headaches after a fall at work.  R. 808.  Her application was denied initially and upon reconsideration.

R. 62-68.  Plaintiff requested a hearing, which was held on April 18, 2006, before Administrative Law

Judge Melvin D. Benitz (hereinafter referred to as "ALJ").  R. 804-43.  In a decision dated June 22,

2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.

R. 26-34.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 22-23.  The Appeals

Council denied Plaintiff's request on June 29, 2007.  R. 6-8.  Plaintiff filed this action for judicial

review on August 28, 2007.  Doc. No. 1.

> **B.   Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary,

Plaintiff complained of migraines, brain swelling, an affective (mood) disorder, back and leg pain,

and earache.  R. 60, 73.  Plaintiff was 41 years old at the time of the alleged onset of disability on

August 1, 2000.  She worked as a high school social studies teacher from August 1981 until February

1997 (R. 354) and as a training coordinator and systems specialist in information systems from

February 1997 until she fell out of a rolling chair at work and injured her tail bone and back in May

2000 (R. 392, 596); she was laid off in August 2000.  R. 354, 376, 697, 810-11.  Her attempts to

return to work as a substitute teacher after August 2000 were unsuccessful.  R. 28.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that

Plaintiff suffered from cervical and lumbar degenerative disc disease, post traumatic headaches, and

an adjustment disorder, which were "severe" medically determinable impairments, but not

impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1,

Subpart P, Regulations No. 4.  R. 28-29.  The ALJ determined that Plaintiff retained the residual

functional capacity (RFC) to perform a range of sedentary work.  R. 31.  In making this determination,

the ALJ found that Plaintiff clearly had limitations and pain secondary to her medical conditions, but

the extent of the limitations that she alleges is not consistent with the objective evidence. R. 31. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 32. Considering Plaintiff's RFC and the testimony of the vocational expert (VE), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 33. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 33-34.

Plaintiff asserts four points of error. First, she argues that the ALJ erred by finding she had the RFC to perform sedentary work contrary to her treating physician's statements. Second, Plaintiff contends the ALJ erred by failing to state with particularity the weight he gave different medical opinions. Third, she asserts that the ALJ erred by omitting some of her limitations from the hypothetical question posed to the VE. Fourth, she argues that the Appeals Council did not apply the correct legal standard in denying review of the ALJ's decision. Though not discussed in the order Plaintiff presented, for the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### III. ANALYSIS

#### A.      RFC and the treating physician's opinion

Plaintiff claims that the ALJ should not have found her able to perform a range of sedentary work in light of limitations assigned by her treating psychiatrist, Dr. Jenaro F. Fernandez, M.D., precluding the performance of any work.  Plaintiff also contends that the ALJ did not clearly articulate reasons for giving less weight to the opinion of Dr. Fernandez, but merely made an unsupported generalization and did not use a "longitudinal" review of the notes.  The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal any listed impairment, including Listing § 12.04 for affective disorders.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  "Good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*; *see Philips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2).  Where a treating physician has merely made conclusory statements,

the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity.  By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience.  Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).  However, at this stage of the evaluation process, the burden is on the plaintiff to prove that she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987).  In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Dr. Fernandez was Plaintiff's treating psychiatrist from March 2002 until September 2003. On April 4, 2002, Plaintiff presented to Dr. Fernandez for an independent evaluation. R. 694-704. She informed Dr. Fernandez that she was laid off work on August 1, 2000, after the company she worked for went through a corporate reorganization. R. 694, 697. Plaintiff said that she felt hopeless, cried a lot, and felt worthless; Plaintiff had normal thought processes and thought content with no contamination in her perception. R. 698-99.  She had a very good self-image and was very bright intellectually, with an excellent memory, both remote and recall; her psychomotor activity was normal and her insight and judgment were clear.  R. 699.  Dr. Fernandez's diagnostic mental health

-6-

Case 6:07-cv-01359-ACC-DAB   Document 19   Filed 07/28/08   Page 7 of 17 PageID 102

impression was adjustment disorder; moderate to severe psycho-social stressors; and Global Assessment of Functioning (GAF) of 70[1]. Dr. Fernandez opined that medication would help improve Plaintiff's energy and motivation and other depressive symptoms; he opined that she did not need psychiatric restrictions. R. 700-01. To the contrary, Dr. Fernandez recommended that Plaintiff look for a job or gainful employment. R. 701.

On January 7, 2003, Dr. Fernandez completed a questionnaire in which he opined that Plaintiff suffered from a depressive syndrome characterized by at least four of the findings required under Listing 12.04, and that she suffered from a manic syndrome characterized by at least three of the findings required under Listing 12.04; he also diagnosed a bipolar syndrome resulting in marked limitations of activities of daily living and deficiencies in concentration, persistence and pace. R. 672-74. In March 2003, Dr. Fernandez diagnosed Plaintiff with an adjustment disorder, chronic, with depression and mood swings. R. 669.

Months later, on September 5, 2003, Dr. Fernandez completed a Mental Health Report provided to him by Plaintiff's counsel in which he opined that Plaintiff did not have any contamination in her thinking processes or any auditory or visual hallucinations or delusions and diagnosed Plaintiff with a bipolar disorder, mixed, stable with medication, prognosis guarded to fair. R. 662-63. He opined that Plaintiff was able to perform work and had excellent intellectual functioning overall. R. 663.

---

[1]According to the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders  34 (4th ed.-text revision 2000), the GAF scale is used to report the clinician's judgment of the individual's level of functioning in the psychological, social and occupational realms especially useful in planning a course of treatment, measuring its impact and predicting outcome (attached). A GAF score between 65-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

On November 7, 2003, Dr. Fernandez completed a questionnaire in which he indicated that Plaintiff suffered from a depressive syndrome, characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and difficulties concentrating or thinking, and a manic syndrome, characterized by hyperactivity, pressure of speech, decreased need for sleep, and easy distractibility.  R. 672-73.  Dr. Fernandez concluded that Plaintiff suffered from a bipolar syndrome, resulting in marked restrictions of activities of daily living and deficiencies of concentration, persistence and pace resulting in frequent failure to complete tasks in a timely manner in work settings; Dr. Fernandez opined that the physical injuries that Plaintiff sustained on May 1, 2000 were a contributing cause of this psychiatric condition. R. 674, 801-04.

The ALJ found that Dr. Fernandez's treatment notes and other objective medical documentation failed to support Dr. Fernandez's conclusion that Plaintiff met Listing 12.04:

> The undersigned has considered the report of Dr. Fernandez, dated January 7, 2003, that the claimant met the criteria of listing 12.04.  Opinions of treating physicians are given great weight when supported by objective medical evidence and are consistent with other substantial evidence of record.  However, this is not the case with regard to Dr. Fernandez's opinion.  He indicates that she has marked limitations in social functioning, performing activities of daily living, and maintaining attention and concentration.   However, the treatment notes and other objective medical documentation fail to support this conclusion.  The claimant was frustrated with her inability to find a job, and she was experiencing pain from her medical condition, but she was in no way as severely limited as indicated.  To suggest that she met the listing is completely at odds with her GAF score of 70, which reflects only mild symptoms and limitations.  Even his own notes reflect that her physical problems are what is most disabling.

R. 31.  As an initial matter, the ALJ's basis for rejecting Dr. Fernandez's opinion was specific enough in detail, referring to the language in his treatment notes.

The Court also finds that the ALJ's finding that Plaintiff's mental impairment did not meet a listing was based on substantial evidence in light of Dr. Fernandez's treatment notes and his deposition testimony.  R. 170-93, 662-704.  Plaintiff's own actions belie the severity of her mental

impairments or limitations.  Plaintiff went without psychiatric treatment for a lengthy period of time – two and a half years from September 2003 to February 2006 – between the time she stopped treatment with Dr. Fernandez and she began treatment with another psychiatrist, Maria J. Lozano, M.D. in February 2006.  R. 765 (Dr. Lozano incorrectly noted it had been "about one year").  The Record contains medical records from Dr. Fernandez which end as of September 2003.  R. 3 (Ex. 11F, for the period from 3/25/02 to 9/5/03; R. 662-92).  The state agency reviewing psychiatrist noted the absence of any current records as of February 2004 on which to base an opinion.  R. 731-43.

In his last medical entry in the record, on September 5, 2003, Dr. Fernandez noted that "patient has physical disability *mostly*."  R. 662 (emphasis in original).  He also noted that she had "no contamination in her thinking processes" and normal remote and recall memory, but her concentration could be "variable, depending on physical pain."  R. 662.  Dr. Fernandez stated Plaintiff was "able to perform (not physically demanding tasks).  She has excellent intellectual functioning overall - able to process memories etc.  Her limitations are mostly physical."  R. 663.  The ALJ cited to Dr. Fernandez's treatment notes "reflect that her physical problems are what is most disabling," which is consistent with the notes from September 2003 and reflect a "longitudinal" review of Plaintiff's psychiatric records.

When Dr. Fernandez testified on February 11, 2003 regarding Plaintiff's mental condition for purposes of  Plaintiff's workers compensation case, he explained that Plaintiff had a "tendency . . . to be kind of up and down, kind of hypermanic, very hyper-verbal, with speech pressure, and not very focused in things, with frequent changes in attention and concentration. . . . Even though she might have limitations, I think that she's still willing to work, and she's capable to work to a good degree. Not maybe a full-time job.  I'm not sure.  It depends on what type of a job. . . .[A] stressful, relatively free moment to sit down and walk and be like maybe a supervisor, that type of a job, I think she could

handle, but not a stressful job, like you said." R. 177.   He states later in the testimony about her ability to handle work stress: "I think that she's sensitive and vulnerable to this thing that I mentioned – the stressful factors.   But I also have to say that she has significant social skills and good personality, so it's difficult to find a balance, to find a job where she can fit with those characteristics. But ideally, if she could find a job like that, she could perform it, I think. . . .   I think she should be given an opportunity, either through voc rehab or somebody, she should be able to get a job, because she's motivated and capable." R. 180-81.

Dr. Fernandez further explained that he had put Plaintiff on a mood stabilizer, but she was not taking the full dose, for the treatment of cyclo-thymia disorder, which is similar to bipolar disorder, but "it's not as high as the manic, nor as low as the depressive phase." R. 181, 186.   Dr. Fernandez assigned a two to three percent psychiatric impairment, but not necessarily permanent (depending on whether Plaintiff could find a job and was experiencing reduced pain) and she had reached maximum medical improvement as of July 2002.   R. 184-85.

When Dr. Fernandez was asked whether Plaintiff would have the ability to get along well with co-workers in an office setting (R. 188), he responded that "it depends on the position.   If she's in a supervisor position, she can do very well.   Now, if she's in a crowd of people where she has to be one of many, and get it out, having to get along with too many people, probably would be more difficult for her naturally . . . because she is not by training that kind of a person.   She has been an executive person." R. 188.   Dr. Fernandez sums up his testimony toward the end of his deposition:

> The type of job she can handle, has to be one – has the freedom where she can manipulate the environment and her own hours, to some degree, and the job the way she performs.   Like a supervisor.   You can sit down, stand up, you can walk, you can come and go, do certain things that she's very capable to do, but not necessarily do the labor work, so to say.   So she does have limitations and deficiencies in that area.   And that is obvious.   But that doesn't mean that she has – that she's impotent to do other jobs.   She can do other jobs. . . [L]ast week she mentioned that she applied to be a drug

> rep. I think that's specifically that position could be one of the ones she could do, because a lot of people come here to my office, . . . and do whatever they want, as long as they cover the territory. . . And I think this patient could fit into that category, if given the opportunity.

R. 189. Dr. Fernandez did not give Plaintiff any psychiatric restrictions. R. 192. Instead, he testified that he "would prefer for her to be able to find a job, if we can find this type of job that we just mentioned before." R. 192. While Dr. Fernandez's testimony indicates Plaintiff may have limitations on concentration issues when bothered by headaches (which the record shows were reduced over time) or back pain, it certainly does not support marked limitations in social functioning or performing activities of daily living, which restrict Plaintiff from performing any work. To the contrary, Dr. Fernandez encouraged Plaintiff to continue to seek employment within her physical functional limitations, believing work would improve her mental symptoms, and assigned no psychiatric restrictions. The ALJ's rejection of Dr. Fernandez's opinion that Plaintiff met the listing for affective disorder was based on substantial evidence in the record.

### B. The AC's failure to grant review based on Dr. Lozano's opinion

Plaintiff argues the Appeals Council should have granted review of the ALJ's decision based on the new material evidence she submitted, *i.e.*, the opinion of Dr. Lozano, who first evaluated Plaintiff in February 2006. Plaintiff contends that the Appeals Council failed to evaluate the entire record and did not meaningfully consider this evidence. The Commissioner responds that this evidence from Dr. Lozano was not new or material and would not have changed the ALJ's decision; moreover a check the box form without supporting evidence provides little insight into the plaintiff's limitations.

When a plaintiff submits additional evidence to the Appeals Council and argues that the Appeals Council erred in denying review, the court must determine whether the Commissioner's

decision is supported by substantial evidence on the record as whole.  *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram,* the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

On March 2, 2007, Plaintiff's counsel submitted to the Appeal Council treatment notes from January 15, 2007 and a questionnaire dated February 26, 2007 from Dr. Lozano in which she checked off the following statements:  Plaintiff suffered from a depressive syndrome, characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and difficulties concentrating or thinking, and marked restrictions in activities of daily living, marked difficulties in maintaining social functioning and deficiencies in concentration, persistence and pace resulting in frequent failure to complete tasks in a timely manner, and repeated episodes of deterioration or decompensation in work or work-like settings which cause her to withdraw from the situation or to experience exacerbation of signs and symptoms.  R. 14-16. Although Plaintiff's counsel submitted the questionnaire to Dr. Lozano prior to April 12, 2006, the doctor did not return it until February 26, 2007.  It was received by the Appeals Council on June 20, 2007 (R. 9), but the Appeals Council denied Plaintiff's request for review.  R. 7.

The Commissioner contends that the treatment notes and the questionnaire do not relate to the period of time under review by the ALJ, who rendered the unfavorable administrative decision on June 22, 2006.  Plaintiff's date of last insured is December 31, 2005.  R. 26.  Dr. Lozano's treatment notes are for January 15, 2007 and the questionnaire, February 26, 2007, are well after the ALJ's decision and the date of last insured.  The initial psychiatric evaluation from February 2006 is the only

other medical record from Dr. Lozano in the file, and it constituted the initial treatment evaluation and plan. R. 766. In the February 7, 2006 evaluation, Dr. Lozano noted that Plaintiff had above average intelligence, no evidence of thought disorders or delusions, was calm and cooperative, pleasant, goal oriented, with fair insight and judgment. R. 766. Plaintiff was to "follow up in one month" which she apparently did not do until eleven months later, in January 2007. R. 800. She was again told to follow up in "six weeks," but there are no treatment records from a February 2007 appointment, only the "check-off" form provided by Plaintiff's counsel and completed by Dr. Lozano. R. 801-03. Beyond the fact that Dr. Lozano only treated Plaintiff once in 2007 following the initial evaluation in 2006, the form used is particularly suspect because all of the choices in category 3 regarding functional limitations from a depression (or manic) syndrome ask only whether the condition is "marked"- yes or no; whereas the SSA form for functional limitations lists several degrees: "none, mild, moderate, marked, and extreme." *See* R. 727. The Court agrees, under these circumstances, that the form completed by Dr. Lozano is weak evidence and the Appeals Council did not err in denying review of the ALJ's decision. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check box or fill in a blank are weak evidence at best.").

### C.   Hypothetical to the VE

Plaintiff contends the ALJ erred in posing a hypothetical to the VE that did not contain the limitation that Plaintiff has moderate deficiencies in persistence or pace. R. 834-35. Instead, Plaintiff argues, the ALJ contradicted the limitation by stating that Plaintiff seemed able to attend schedules and complete tasks. R. 835.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or

restrictions of the particular claimant.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ asked the VE:

> Could a person who was 41 years of age on her onset date, has a twelfth grade plus four years of college, and certain computer work that's relevant.  She is a right-handed individual suffering from degenerative disc disease, mostly at the L5-S1 level, and some depression, probably with an affective disorder, according to the file, with a large amount of pain and discomfort, back and neck, and from depression.  Her file indicates she has headaches on occasion. . . .  And her symptoms are somewhat relieved by medications.  And without them – she has sleepiness and some tiredness from one, and a combination, and some thirstiness. . . [S]he was able to lift ten pounds on occasion, or lesser amounts frequently, stand 15 to 20 minutes, can sit 15-20 minutes at a time, would need a sit/stand option on that frequency, simple, routine jobs, no stress, low concentration, no memory level job either from depression.  Appears to be able to attend schedules and complete tasks, however.  Avoid overhead reaching, temperature and humidity extremes due to the injury.  And due to her sleepiness, avoid heights and moving machinery, hazardous machinery, and no prolonged climbing, balancing, stooping, would be able to do sedentary work activities with those limitations.  Is there a job out there such a person could do with those limitations in significant numbers in the national economy, in your opinion as a vocational expert?

R. 835-36.  In response to the ALJ's hypothetical, the VE identified jobs such as inspector/table worker, addresser and order clerk at the sedentary level, all found in significant numbers in the national economy that an individual with Plaintiff's vocational characteristics could perform.  R. 833-38; R. 32-33 Finding Nos. 9-10.

Plaintiff contends that the hypothetical failed to contain two essential limitations, and it was error for the ALJ to rely on the VE's response to the defective hypothetical.  Plaintiff argues the ALJ failed to include in his hypothetical questions to the vocational expert Dr. Kollmer's assignment to

Plaintiff of a permanent impairment rating of eight percent of the whole person based upon the 1996 Florida Uniform Impairment Rating Schedule.  Doc. No. 15 at 19 (citing R. 568).

An impairment rating standing alone would tell the VE nothing of Plaintiff's limitations; instead, the ALJ included in the hypothetical functional limitations that were consistent (or even more restrictive than) the ones Dr. Kollmer assigned to Plaintiff.  *See* R. 561, 605 (lift up to 10 pounds occasionally; sit 30 minutes up to 6 hours per day; stand 30 minutes or walk 20 minutes up to 2 hours per day; change positions as needed).  Inclusion of the functional limitation/restrictions assigned by Dr. Kollmer, rather than impairment rating, was appropriate.

Plaintiff also contends that the ALJ failed to include Plaintiff's complaints concerning her moderate deficiencies in concentration, persistence or pace in any hypothetical question to the vocational expert.  Plaintiff also argues inclusion in the hypothetical that she "appears to be able to attend schedules and complete tasks" is inconsistent with Dr. Fernandez's finding that Plaintiff's deficiencies in concentration result in frequent failure to complete tasks in a timely manner. R. 673. Plaintiff points to her testimony at the administrative hearing that she sometimes she had trouble concentrating (R. 822), had lost her ability to remember numbers and people's names (R. 817), that she had to move in with a coworker because she couldn't take care of herself (R. 817), and that she could hardly get out of bed (R. 818).

The ALJ's inclusion that Plaintiff "appears able to attend schedules and complete tasks" was consistent with Dr. Fernandez's deposition testimony that Plaintiff had "no contamination in her thinking processes" and normal remote and recall memory, and "excellent intellectual functioning overall - able to process memories etc. Her limitations are mostly physical." R. 668-63.  The Court finds that the ALJ's inclusion in the hypothetical a restriction for "simple, routine jobs, no stress, *low concentration, no memory* level job" (R. 835) adequately captured Dr. Fernandez's finding that

Plaintiff had deficiencies in concentration, persistence and pace (R. 673).  Accordingly, the ALJ's hypothetical properly included Plaintiff's limitations and his reliance was based on substantial evidence.

###### D.        Weight given to various medical opinions

Plaintiff asserts that the ALJ erred by failing to state with particularity the weight he gave different medical opinions.  Doc. No. 15 at 15 (citing *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) and *McCloud v. Barnhart*, 166 Fed.Appx. 410 (11th Cir. 2006)).  Although Plaintiff lists a number of Plaintiff's doctors, including Dr. Kollmer, Dr. Coleman, or Dr. Jungries, and argues that the ALJ failed to state with particularity the weight he gave their opinions, the Commissioner merely argues that the ALJ correctly rejected Dr. Fernandez's opinion that Plaintiff met the Listing and does not mention the other doctors at all.  Nonetheless, the Court finds the ALJ discussed and accepted each doctor's restrictions in discussing whether Plaintiff could do sedentary work.  R. 31-32. Moreover, the ALJ accorded these treating physicians' opinions the appropriate weight by including the functional limitations set by Dr. Kollmer in the hypothetical to the VE (as discussed above), since the other doctors had deferred to the restrictions set by Dr. Kollmer.  R. 124 (Dr. Coleman deferring to Kollmer's treatment); 203 (Dr. Jungreis (neurologist defers to Kollmer));  274 (Dr. Greenberg agreeing to Kollmer's restrictions); 835-36 (hypothetical).  The ALJ's decision as to these treating physicians restrictions was based on substantial evidence.

### IV.  CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments.  As her treating psychiatrist explained, Plaintiff cannot return to her past relevant work, or similar work at an executive level, and this has contributed to her mental health issues.  The ALJ appropriately considered these circumstances and analyzed them in relation

to the exacting disability standard under the Social Security Act, whether there is any other work at any other level that Plaintiff could perform in the economy.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 28, 2008.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy